UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE J. CALLAGHAN,

      Plaintiff                              Civil Action No. 10-12499

v.                                      HON. JOHN CORBETT O'MEARA
                                           U.S. District Judge
                                           HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Clarence J. Callaghan brings this action pursuant to 42 U.S.C. §405(g), challenging

a final decision of Defendant Commissioner denying his application for Disability Insurance

Benefits under the Social Security Act. Both parties have filed summary judgment motions which

have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For

the reasons set forth below, I recommend that Defendant's motion for summary judgment be

GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

      On February 18, 2005, Plaintiff filed an application for Disability Insurance Benefits ("DIB")

alleging disability as of January 7, 2002 (Tr. 44-46). After the initial denial of the claim, Plaintiff

filed a timely request for an administrative hearing, held on December 3, 2007 in Flint, Michigan

before Administrative Law Judge ("ALJ") Peter M. Dowd (Tr. 343). Plaintiff, represented by

attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Judith Findora (Tr. 350-374,

374-378). On March 19, 2008, ALJ Dowd found that Plaintiff was not disabled (Tr. 20). On April

22, 2010, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final

decision on June 23, 2010.

## BACKGROUND FACTS

Plaintiff, born November 27, 1952, was 55 when the ALJ issued his decision (Tr. 44). His application for DIB states that he completed high school and worked previously as a supervisory inspector for General Motors (Tr. 80, 86). He alleges disability as a result of a herniated back disc and bilateral carpel tunnel syndrome ("CTS") (Tr. 79).

### A.    Plaintiff's Testimony

Plaintiff, right-handed, testified that he stood 5' 9" and weighed 185 pounds (Tr. 352). He reported that he held a driver's license and had driven himself to the hearing (Tr. 353). A former employee of General Motors, Plaintiff reported that he currently received $644 each week from Workers' Compensation (Tr. 354). He indicated that he last worked as a "team leader," requiring him to fill in for employees taking breaks and ensure that assembly workers were supplied with gloves and aprons (Tr. 353). Prior to holding the team leader position, Plaintiff reported that he performed assembly work and "ergonomics," which involved investigating "jobs that showed likelihood of numerous injuries" in an effort to lower the injury rate (Tr. 356).

In addition to his position at General Motors, Plaintiff reported that he owned a snow plowing and lawn maintenance company (Tr. 358). He conceded that in the year following his alleged onset of disability he received $46,182 in profits, but that his wife ran the business (Tr. 358). Plaintiff alleged that although he was the owner, he kept the business running only for the purpose of keeping his wife employed (Tr. 362).

In response to questioning by his attorney, Plaintiff reported that he stopped working after injuring himself while working at General Motors (Tr. 365). He testified that back surgery helped his condition on a temporary basis only (Tr. 366). He admitted that he had declined recommendations from his family physician to undergo further surgery (Tr. 370-371). He reported

-2-

that he currently wore a brace going from his foot up to knee height for a "sciatic nerve issue,"

noting that the condition had caused him to fall and break a toe the previous November (Tr. 366).

Plaintiff alleged that he was unable to walk or stand for more than 20 minutes at a time (Tr. 366).

He reported that the side effects from his daily pain medication caused drowsiness and concentration

problems (Tr. 367). He also alleged manipulative limitations as a result of bilateral CTS (Tr. 368-

369).

Plaintiff noted that his wife and others were responsible for housework, yard work, and

grocery shopping activities (Tr. 367). He indicated that he napped daily for approximately an hour

and a half (Tr. 371). Plaintiff testified that he took antidepressive medication prescribed by his

family physician but denied seeking mental health treatment (Tr. 372).

### B.    Medical Evidence

### 1. Treating Sources

In November, 2001, Plaintiff sought treatment for upper extremity tremors (Tr. 339). Henry

Hagenstein, D.O., ruling out Parkinson' disease, observed normal muscle tone and strength in both

extremities as well as a stable gait (Tr. 341). In December, 2001, Harry N. Herkowitz, M.D.

recommended a discectomy (Tr. 332). An MRI taken the same month showed a herniation at L4-L5

with borderline spinal stenosis (Tr. 335, 338). Dr. Herkowitz performed the procedure in January,

2002 (Tr. 327).

In April, 2002, an MRI showed disc protrusion at L5-S1 and a disc herniation at L4-L5 (Tr.

334). Jeffrey R. Levin, M.D. stated that he was "not clear what operation was completed" in

January, 2002 (Tr. 328). May, 2002 nerve conduction studies showed the presence of CTS and C5-6

and L5-S1 radiculopathy (Tr. 326). The same month, Dr. Herkowitz found that Plaintiff's cervical

and lumbar range of motion was normal with 5/5 strength in both extremities (Tr. 330). He noted

that Plaintiff was taking "minimal medication" (Tr. 330). In September, 2002, Jeffrey R. Levin, M.D. noted current findings of CTS, right rotator cuff pathology, and L5-S1 and C5-6 radiculopathy (Tr. 325). In April, 2003, Plaintiff underwent right shoulder arthroscopic surgery (Tr. 309-315). April, 2003 physical therapy notes show that Plaintiff was diligent in attending physical therapy and had made "steady progress" (Tr. 307). December, 2003 physical therapy discharge notes state that Plaintiff reported decreased shoulder pain after undergoing ten sessions, noting that he was able to resume "drawing back on his hunting bow" (Tr. 303). A June, 2006 MRA of the brain was unremarkable (Tr. 278). The same month, an MRI of the brain showed some degree of "ischmic change, migraines or hypertensive or diabetic vasculopathy" but "no abnormal enhancement, no neoplasm, cortical infarction or demyelination" (Tr. 279). In September, 2006 Plaintiff sought treatment for headaches (Tr. 274). Dr. Hagenstein noted that Plaintiff reported depression, insomnia, and dizziness but was fully oriented with normal pinprick sensation (Tr. 274-275). Plaintiff also displayed normal muscle tone, 5/5 strength in the upper and lower extremities, and good coordination (Tr. 275).

In July, 2007, Plaintiff was prescribed Darvocet (Tr. 212). In September, 2007, Plaintiff sought emergency treatment for kidney stones (Tr. 204-207, 217-223). He was treated and released in stable condition (Tr. 204). In November, 2007, Joseph Trollman D.O. completed a medical source statement on behalf of Plaintiff's DIB application, finding that Plaintiff experienced moderate difficulties withstanding "the stress and pressures associated with an eight-hour work day" but from a psychological perspective was otherwise unimpaired (Tr. 208). Dr. Trollman found further that Plaintiff was unable to lift even 10 pounds, stand or walk for more than two hours in an eight-hour workday, or sit for more than six hours due to a herniated disc, bilateral CTS, spondylosis, myalgia, and ataxia (Tr. 209). He opined that Plaintiff's ability to push and pull was severely limited in the lower extremities and mildly limited in the upper (Tr. 209, 224).

-4-

### 2.  Non-Treating Sources

In October, 2002, Jeoffrey K. Stross, M.D. examined Plaintiff (Tr. 215-216).  He opined that as a result of Plaintiff's "poor result" from back surgery, he was eligible for disability retirement from General Motors (Tr. 216).  In May, 2005, Samiullah H. Sayyid, M.D. performed a consultive physical examination on behalf of the SSA (Tr. 292-299).  Dr. Sayyid noted a diagnosis of CTS and 2002 herniated disc surgery at L4-L5 with recurrence of disc protrusion at L5-S1 (Tr. 294).  Plaintiff demonstrative a normal range of motion in the cervical spine but tenderness and limitation of movement in the lumbosacral spine (Tr. 293).

The same month, a non-examining Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for approximately six hours in an eight-hour workday; and push and pull without limitation (Tr. 285).  Plaintiff was restricted to *occasional* climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 286).   His manipulative limitations consisted of frequent, as opposed to *constant*, reaching overhead on the right (Tr. 287).  The Assessment found the absence of visual, communicative, with environmental limitations consisting of "avoidance of even moderate exposure to vibrating tools" (Tr. 287-288). The Assessment deemed Plaintiff "fully credible" (Tr. 289).

### C.  Vocational Expert Testimony

VE Judith Findora classified Plaintiff's former work as a production worker as unskilled at either the light or medium exertional level; grounds keeper as unskilled, light; and ergonomics investigator as semi-skilled, light[1]  (Tr. 124, 375).  The ALJ then posed the following question to

---

[1]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent

the VE, taking into account Plaintiff's age, education, and work history:

> [A]ssume . . . that the individual can maximally lift weights of 20 pounds, can repetitively lift weights of 10 pounds or less, can stand and walk 6 of 8 hours in a normal 8 hour work day, can sit for 6 of 8 hours in a normal 8 hour work day, could occasionally climb stairs, balance, stoop, kneel, crouch and crawl and should not do constant reaching overhead with the left upper extremity. Could such an individual perform any of Mr. Callahan's past relevant work?

(Tr. 376-377). The VE stated that the above limitations would allow the individual to perform his past relevant work as follows: "most of his production work," the groundskeeper position, and the ergonomics investigator position (Tr. 377). The VE testified further that Plaintiff would be capable of other light jobs such as assembler (35,300 positions in the lower peninsula of Michigan) and machine operator (22,500) (Tr. 377). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 378).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ found that Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine, bilateral CTS, right rotator cuff tear (2002), positive Epstein barr titer (2005), headaches, hypertension, diabetes, and kidney stones, but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 16). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [O]ccasional stair climbing, balancing, stooping, kneeling, crouching and crawling. The claimant also can only frequently (and not constantly) reach overhead with the right arm.

(Tr. 16). Consistent with the VE's job findings (Tr. 377), the ALJ determined that Plaintiff could

---

lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

perform his former work as an ergonomics investigator, landscape maintenance worker, and snow plow operator (Tr. 19).

In support of the non-disability finding, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his physical conditions were "not credible to the extent they [were] inconsistent with the residual functional capacity assessment" (Tr. 19). The ALJ observed that Dr. Trollman's November, 2007 assessment was contradicted by physical therapy records,   consultive examination findings, and Plaintiff's continued ability to own a landscaping company (Tr. 19). The ALJ noted that Plaintiff held a motorcycle license, had significant gambling winnings in 2004, and "appear[ed] able to bow hunt" (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff argues that the hypothetical limitations posed by the ALJ did not reflect his full degree of impairment.  *Plaintiff's Brief* at 6-12, *Docket #13.*  He contends that the limitations contained in Dr. Trollman's November 21, 2007 report ought to have been included in the hypothetical question, noting that the medical record as a whole supports Dr. Trollman's conclusions *Id.* at 8-11.  Plaintiff contends that the ALJ's failure to account for all of  his limitations invalidates the VE's finding that he was capable of returning to his past relevant work .  *Id.* at 6-7.

*Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the

individual's impairments.  *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir.

2004).  However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his

hypotheticals."  *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th

Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th

Cir.1987).

      As an initial matter, substantial evidence supports the ALJ's choice of hypothetical

limitations.  Consistent with the May, 2005 Residual Functional Capacity Assessment, he found

Plaintiff capable of light work with postural activities limited to an occasional basis[2] (*compare* Tr.

285-286, 376-377).    Additional evidence supports the hypothetical question and ultimate non-

disability finding.  May, 2002 treating notes indicate that Plaintiff demonstrated 5/5 strength with

a normal range of cervical and lumbar motion  (Tr. 330).  June, 2006 imaging studies of the brain

showed the absence of an neurological disease (Tr. 278-279).  In September, 2006, Plaintiff again

demonstrated normal muscle tone with good coordination (Tr. 275).  December, 2003 physical

therapy  notes suggest that following shoulder surgery in April, 2003, Plaintiff was able to resume

bow hunting  (Tr. 303).  Because substantial evidence supports the conclusion that Plaintiff could

perform his past relevant work, his hypothetical question argument is unavailing.

      Next, Plaintiff combines the "hypothetical question" issue with a secondary argument that

the ALJ did not give proper deference to the November, 2007 opinion of longtime treating physician

Dr. Trollman.  To be sure, "if the opinion of the claimant's treating physician is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

---

     [2] The ALJ's hypothetical deviated from the May, 2005 Assessment only as follows: he
precluded "constant reaching overhead with the left upper extremity" (Tr. 377) whereas the
Assessment found that limitation in the upper *right* extremity (Tr. 287).  The Assessment's
restriction on the use of vibrating tools is absent from the hypothetical question (Tr. 288).

other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). However, as discussed above, Dr. Trollman's finding of disabling limitations is contradicted by the observations of other treating and examining sources supporting the finding that Plaintiff could perform light work. Moreover, the ALJ devoted almost an entire page of discussion to his reasons for discounting Dr. Trollman's opinion. *See* 20 C.F.R. § 404.1527(d)(2). As such, Plaintiff can scarcely argue that the ALJ failed to explain his reasons for rejecting the treating opinion or that the analysis was otherwise inadequate. Because the ALJ's findings on this point were well supported and well discussed, remand is not appropriate. *See Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004)(In the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings).

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate impairments brought about by shoulder and back conditions. Nonetheless, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. That I might draw a different conclusion based on these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 3, 2011

_____

**CERTIFICATE OF SERVICE**

I hereby certify on May 3, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 3, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217

-11-